C. A. Robbins, Appellant, v. J. P. Steele.

**Partnership:** DISSOLUTION: OPTION TO REPURCHASE: CONSTRUCTION.

1 Plaintiff and defendant were law partners and plaintiff accepted defendant's proposition of dissolution on condition that defendant should fix a price on the firm property and business at which he would either buy or sell, and further that if plaintiff should elect to sell that he should have the right to repurchase the entire busi-

ness within a given time at the same price. *Held* that the price fixed by defendant for the sale related to a one-half interest in the business and property, and that plaintiff having elected to sell could not repurchase for the same amount he received, but should pay double that sum for the entire business.

Same :  TRUSTS: BURDEN OF PROOF. The burden of proof is upon the member of a partnership who contends that he is entitled to become a joint owner of property purchased by the other member of the firm with his own funds, and which he has individually held and enjoyed until dissolution of the firm, to establish the trust.

*Appeal from Madison District Court.*—HON. J. H. APPLE-GATE, JUDGE.

TUESDAY APRIL 2, 1912.

ACTION to enforce specific performance of a written contract for the sale and transfer to plaintiff of a law business with law library and office furniture and fixtures, and to enforce specific performance of an alleged oral contract to transfer to plaintiff certain bank stock, and, further, for an accounting of moneys received and expended in connection with the business of the law partnership. The lower court, after hearing the evidence, entered a decree for the defendant, and the plaintiff appeals.—*Affirmed.*

*A. W. & Phil. R. Wilkinson* and *W. S. Cooper,* and *Sampson & Dillon* for appellant.

*John A. Guiher* and *A. C. Parker* for appellee.

McCLAIN, C. J.—The parties to this suit on July 1, 1890, entered into a contract of copartnership for the practice of law in Winterset, Iowa, which was to continue for a period of three years, but which did in fact continue until September 21, 1905, when the defendant made a written proposition with reference to the dissolution of the partnership, as follows:

For the purpose of effecting a dissolution and making settlement of the affairs of the partnership business now and heretofore existing between us I submit the following proposition:

First Proposition: I will divide the property and business of the said firm in the following manner, viz.: A list and appraisement of the library, furniture and fixtures to be made showing the values of the different sets of text books and the different articles of furniture and fixtures each of us to take our share thereof; the first choice to be determined by lot and each of us to choose alternately until the whole of such property is equally divided. All accounts and notes belonging to the firm in matters where the business with the client is completed is to be divided equally between us. Cases and matters now pending to be completed by the two of us and the fees divided equally. Business on hand in which suits have not been commenced to be divided between us according to the clientage, that is all matters which have come to the firm by reason of Mr. Steele's connection therewith to be held by Mr. Steele, and all matters which have come to the firm by reason of Mr. Robbins' connection therewith to be held by Mr. Robbins. I am to retain the present offices which right is to be offset by the surrendering to you the representation in all commercial agencies in which the firm name of Steele & Robbins now appears and the business we now have on hand connected with the same and the foreign collections on hand. All the briefs prepared by Mr. Robbins to be retained by him and all the briefs prepared by Mr. Steele to be retained by him.

Second Proposition. If you do not wish to accept the first proposition I then make this second proposition: *I will put a price on the whole of the property and business of the firm, which price I will either give or take.* If you shall elect to sell to me then you are to have *the option to buy the same back within three years from this date at the same price I now pay you for the same* plus seventy-five percent of the cost price of all additions made to the library and to the office furniture and fixtures. An inventory is to be made of the property now belonging to the firm and an account to be kept by me of the books, furniture and fixtures added to the property.

Your option to buy back within three years from this date is to be exercised within niety days after I shall notify you of my readiness to permit you to exercise the option and you shall have the right, without notice, to exercise the option at the end of the said three-year period.

In case you elect to buy or sell under this second proposition the sale is to be for cash. If you sell to me then and in that event as a part of the purchase price to you I will assume the payment of the Mrs. Collie note, the payment of the note negotiated to the Citizens' National Bank and cancel the indebtedness owing by you to me.

In case you shall elect to buy you are to pay off the Collie note and the said note at the Citizens' National Bank and pay or secure the one hundred dollars to me, and, in such case, you will turn over to me the earned fees of the firm of Steele & Robbins to provide against the debts and obligations of the said firm which earned fees I am to collect as speedily as possible, applying them to firm obligations and whatever is left to be divided equally between us.

This second proposition does not include fees already earned nor business which has heretofore been commenced nor business commenced for the Oct. term, 1905. All unfinished business is to be completed by the two of us as though no dissolution had occurred and the fees received therefor to be equally divided between us, or such unfinished business is to be divided as fairly as we can and each of the parties to finish the matter turned over to him.

These propositions are only good for today, and unless some basis of settlement is agreed upon to-day, I will take the necessary steps to dissolve our partnership. If you elect to divide the property under the first proposition we are to make the list and appraisement as provided in the first proposition tomorrow, the 21st day of September, A. D. 1905, and continue our labors in relation thereto until full settlement is made. If you conclude to accept the second proposition I am to be notified of such election by nine o'clock a. m. on the 21st day of September, A. D. 1905, and I will at once name to you a price which I am willing to give or take, and by noon of the 21st day of September, A. D. 1905, you are to determine whether you elect to buy or sell at such price and whether you buy or sell the matter to be immediately closed, settlement made

and the partnership dissolved. You election in this matter to be indorsed hereon.

On the next day the plaintiff wrote upon said proposition the following acceptance of the second branch of this proposition:

With the understanding that neither proposition prohibits the practice of law by either member of the firm and with the understanding that the second proposition is intended as now written above, I accept the second proposition to buy or sell; the price fixed by you to be indorsed hereon and this paper returned to me.

Thereupon the defendant indorsed the proposition and acceptance as follows: "I will give or take one thousand dollars on the conditions named in the foregoing instrument."

And on the same day plaintiff delivered to defendant his written election to sell his interest in the business to defendant in writing, as follows: "You are hereby notified that I elect to sell to you the law library and business as per terms already contained in our written propositions and a duplicate of this is indorsed on the proposition held by me."

The amount thus designated was paid by the defendant to the plaintiff, defendant remained in the old offices and continued the practice of the law, and plaintiff opened an office across the hall in the same building, and also engaged in the practice of the law. The business on hand at the time of dissolution was completed by the parties in accordance with their agreement. At the end of three years, plaintiff, desiring to exercise the option given in their contract to buy the whole of the business, library, furniture, etc., tendered to defendant the sum of $1,000 on account of the business and the old library and furniture, and, in addition thereto, the sum of $203 to cover additions which had been made to the library and furniture in the

meantime. Defendant refused to accept the tender, claiming that the price fixed by him was only the value of a half interest, and that plaintiff in exercising his option to repurchase should pay $2,000, with an additional amount necessary to cover the additions to the library and furniture. There was no controversy as to the amount of the tender for the additions thus made. Plaintiff now seeks specific performance of the contract, contending that, on the payment of $1,000 with the additional amount necessary to cover additions to the library and furniture, he is entitled to have transferred to him the entire business and the old library and furniture. Plaintiff proposes, however, if the court shall find that he is under obligation to pay $2,000 for the entire business to exercise his right to repurchase under such finding, and therefore the sole question to be determined with reference to this branch of the case is whether under the terms of the contract plaintiff is bound to pay $1,000 or $2,000 for the entire business with the old library and furniture.

I. It is clear from the preceding statement that the ambiguity, if any, in the contract, is in the following provision of the second proposition made by the defendant, which was accepted by the plaintiff and acted upon by both parties, to wit: "I will put a price on the whole of the property and business of the firm, which price I will either give or take. If you shall elect to sell to me, then you are to have the option to buy the same back within three years from this date at the same price I now pay you for the same." It is to be noticed that the defendant undertakes to put a price on the whole of the property and business, which price he will either give or take. It is evident that it was not intended that either party was to pay to the other the value of the whole of the business in which they were jointly and equally interested, but that either was to pay to the other one-half the price fixed on the whole of the

*1. PARTNERSHIP: dissolution: option to repurchase: construction.*

property and business. There could have been no object in the buyer paying to the seller the entire price for the property and business of which they were joint owners, and receiving back one-half the amount as his proper share of the price of the whole property and business. If either one had been authorized to sell the whole of the property and business to a third party, of course the other would have been entitled to one-half of the amount received. Therefore it is clear that, when the defendant said, "I will give or take $1,000 on the conditions named" in the instrument, and the plaintiff elected to sell on the terms proposed and received $1,000 as full consideration for the transfer to defendant of his half interest, so that the defendant became the owner of the entire property and business, plaintiff impliedly agreed that the price of the whole property and business was $2,000, and that in exercising the option to repurchase within three years "at the same price," which the defendant then paid, he did so with the obligation to pay to the defendant, who was then the owner of the entire property and business, the agreed price of $2,000. Plaintiff was not exercising an option to rebuy the one-half interest which he had sold, but an option to rebuy his former half-interest and the defendant's former half interest. If plaintiff and defendant had been equal owners in common of a certain quantity of grain consisting of 10,000 bushels, and the plaintiff had sold his half interest to defendant for $2,500 with a proposition to rebuy the entire quantity of grain within three months at the same price which he had received for his half interest, it could hardly be contended that the parties understood that the plaintiff was to have back the entire quantity of grain as his own, which had in the meantime become the sole property of the defendant, on the payment of the same amount which plaintiff had received for his half interest in the grain. Further elaboration would seem to be unnecessary, and we are clear that the only construction that can reasonably be put upon

the contract is that plaintiff, exercising his option to re-purchase the entire property and business from the defend-ant, was under obligation to pay twice the amount which he had received for his half interest therein. In this re-spect the finding of the trial court was correct.

II.   It appears that, soon after the formation of their partnership, the plaintiff and defendant entered into the possession of certain office rooms in a building belonging to the Citizens' National Bank. Subsequent-ly, and during the continuance of the partner-ship an attorney who had formerly occupied such offices returned after an absence and obtained a lease from the bank of such offices to the exclusion of the partner-ship, and served notice to quit. The partnership moved across the hall into other offices, but, desiring to regain possession of the offices surrendered, the defendant, after consultation with the plaintiff, purchased certain shares of stock in the bank for the purpose of securing a controlling interest such as would enable him to induce the officers of the bank to again lease such offices to the firm. Such lease was made, and the partnership regained possession of the offices which they had surrendered. Plaintiff now insists that the stock purchased by the defendant became the joint property of the two partners, and that plaintiff is entitled to one-half interest in the bank stock on payment of one-half of the price paid by defendant for the stock. It would serve no useful purpose to set out in detail the evidence relating to this transaction. It is not contended that the partnership was to become the owner of the stock purchased by defendant; but plaintiff contends that, as between him and defendant, he is individually entitled to become the owner of one-half the stock which was purchased with the money of defendant and remained in his name as owner receiving dividends until the institution of this suit. The burden is on the plaintiff to establish the trust. We agree with the lower court that plaintiff has failed to maintain

*2. SAME: trusts: burden of proof.*

this burden and approve the finding that plaintiff is not entitled to any interest in the bank stock purchased by the defendant.

III. Plaintiff in his petition sets out a number of items of fees alleged to have been received by defendant in the partnership business for which he has not accounted, and many items of money advanced by plaintiff for the partnership account which should have been charged to the firm. It appears from an elaborate finding made and filed by the trial judge that all these items have been considered by him and the balance of account as between the partners determined. Counsel for appellant do not refer to the judge's findings nor attempt to point out in what respects they are erroneous, but content themselves with general statements as to the items of their claims, referring to the evidence in the record. Of couse, appellant is entitled to a hearing *de novo* on the record, but it would have been much easier to consider his case if counsel had taken account of the labor which the trial judge had expended upon it and pointed out specifically in what respects the findings were against the evidence. We have given particular attention to the larger items of the plaintiff's account, so far as they were disallowed by the trial court, and reach the conclusion that no different result could have been reached, and, on the whole record, we are satisfied that the decree of the lower court is in accordance with the evidence, and it is therefore sustained.

Appellant's motion to strike the additional abstract filed by appellee, which motion has been submitted with the case, is overruled.

The decree of the trial court is—*Affirmed.*